Accurate Tool Co., Inc. v. Commissioner. Charles E. Fentner, Sr. v. Commissioner. Charles E. Fentner, Jr. v. Commissioner.
Accurate Tool Co. v. Commissioner
Docket Nos. 8802, 10029, 10097.
United States Tax Court
1951 Tax Ct. Memo LEXIS 266; 10 T.C.M. (CCH) 354; T.C.M. (RIA) 51109; April 11, 1951
*266 Petitioner Accurate Tool Co., Inc., was organized in 1941, and during the taxable years 1942 and 1943 was primarily engaged in the business of manufacturing pipe plugs, steel inserts, and wing nuts for United Aircraft. During the years 1942 and 1943, petitioner's directors at both formal and informal meetings approved certain basic salaries and bonuses in the form of a percentage of petitioner's net profits to be paid to its officers. In 1942, petitioner retained an attorney for $5,000 a year to perform services in 1942 and for a portion of 1943, and on February 27, 1943, petitioner paid this attorney $7,500 which it claimed as a deduction in its returns for the year 1942. In 1943, petitioner employed an accountant to adjust its books for 1942 and prepare its 1942 tax returns for which petitioner paid $1,500 on February 27, 1943, and which it claimed as a deduction in its returns for the year 1942. Petitioner claimed $693.51 and $2,578.39 in its returns for the years 1942 and 1943, respectively, as expense deductions which amounts represented the cost of capital items. In 1942, petitioner applied for two certificates of necessity which were approved by the War Department in 1942 and *267 which application listed $7,063.80 of equipment acquired within six months prior to the date of application. Petitioner operated its plant more than eight hours a day during 1942, and claimed accelerated depreciation of $357.84. Held: 1. Respondent has failed to prove that a part of the deficiency for the year 1942 is due to fraud. 2. Respondent erred in part in the deductions which he disallowed for compensation to petitioner's officers for the years 1942 and 1943, and reasonable compensation for petitioner's officers to be allowed as deductions is determined. 3. Deductions taken by petitioner in 1942 for legal and accounting fees of $9,000 apportioned to proper years in which they actually accrued: $5,000 for 1942 and $4,000 for 1943. 4. Amounts of $693.51 and $2,578.39 claimed by petitioner as deductions for expenses for 1942 and 1943, respectively, were improper deductions as they represented capital expenditures. 5. Petitioner is entitled to deductions of $667.21 and $1,412.36 for the years 1942 and 1943, respectively, for the amortization of emergency facilities. 6. Deductions for accelerated depreciation not allowed where evidence does not permit finding that remaining life *268 of machinery was shortened by more than eight hours of operation. 7. Petitioner's excess profits credit for 1943 to be computed under section 718 (a) (4), I.R.C., to include in equity invested capital its accumulated surplus as of January 1, 1943. Petitioners Charles E. Fentner, Sr., and Charles E. Fentner, Jr., both cash basis taxpayers, included in income for 1942 certain sums neither actually nor constructively received until 1943, and failed to include in income for 1943 certain sums received in that year. Held, respondent did not err in determining the net incomes of petitioners for the years 1942 and 1943. Elden McFarland, Esq., and Eugene O'Dunne, Jr., Esq., for the petitioners. M. L. Sears, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These proceedings have been consolidated. Respondent has determined deficiencies in income and excess profits tax for the years 1942 and 1943, and fraud penalties for the year 1942 against petitioner Accurate Tool Co., Inc., as follows: 1942
1943
Deficiency
Penalty
Deficiency
Income Tax
$ 12.07
$ 6.04 $ Excess Profits
Tax
30,242.92
15,121.47
20,755.18
Respondent has determined deficiencies in income and victory tax for the year *269 1943 against petitioner Charles E. Fentner, Sr., in the amount of $490.94 and against petitioner Charles E. Fentner, Jr., in the amount of $2,023.60. The year 1942 is involved because of the Current Tax Payment Act of 1943. The deficiency against petitioner Accurate Tool Co., Inc., for the year 1942 results from eight adjustments to petitioner's net income. The adjustments in controversy were explained by the respondent as follows: (a) Retroactive adjustments accruing salaries and bonuses as of December 31, 1942, have been disallowed as deductions from taxable income. [$27,050.24] (b) Legal and accounting fees accrued as of December 31, 1942, are not considered as ordinary and necessary business expenses, and are, therefore, disallowed as deductions from taxable income. [$9,000.00] (c) Capital items deducted as expenses in your return should be charged to capital account and recovered through depreciation charges over the remaining life of the assets. [$693.51] (d) Amortization of war facilities has been disallowed as a deduction in computing taxable income. [$148.23] (e) Accelerated depreciation resulting from retroactive adjustments as of December 31, 1942, has been disallowed as *270 a deduction from taxable income. [$357.84] For the year 1943, the adjustments in controversy were explained by the respondent as follows: (a) Profit-sharing bonuses paid to officers of the corporation have been disallowed as deductions from taxable income. [$19,743.82] (b) Capital expenditures reported as expenses should be charged to capital account and recovered through depreciation charges over the life of the assets. [$2,578.39] (c) Deduction for amortization of war facilities has been disallowed in computing taxable net income. [$1,176.28] Respondent has also determined that for the year 1942, a part of the deficiency is due to fraud because certain deductions claimed in 1942 were not in fact authorized by the corporation until 1943, and has, therefore, added to the deficiency the 50 per cent fraud penalty under section 293 (b) of the Internal Revenue Code. By appropriate assignments of error petitioner contests these determinations of respondent. Petitioner also assigns as error respondent's failure to allow accumulated earnings as of January 1, 1943, as part of petitioner's equity invested capital in computing its excess profits tax credit for the year 1943. Petitioner, by *271 way of an amendment to its petition, requests that in the alternative such items which may be found to be improper deductions for the year 1942 be allowed as additional deductions for the year 1943, to the extent that they are proper deductions for the year 1943. The deficiencies in Charles E. Fentner, Sr.'s and Charles E. Fentner, Jr.'s income and victory taxes result from several adjustments to their net incomes for the years 1942 and 1943. Petitioners have either not contested or conceded in their briefs all but the adjustments which relate to the year in which certain income is to be included. These adjustments as to petitioner Charles E. Fentner, Sr., were explained as follows: 1942 (c) Inasmuch as you reported your income on the cash basis, the amount of accrued salaries and bonuses paid, to you on February 27, 1943, does not constitute taxable income for 1942. Salaries and bonuses reported
$23,811.22
Amount actually received
8,515.00
Adjustment to income
$15,296.22
1943 (a) Adjustment has been made to your taxable income to reflect the amount of salary and bonuses actually received by you during the year 1943. Amount received
$24,683.47
Amount reported
19,968.79
Adjustment to income
$ 4,714.68
These *272 adjustments as to petitioner Charles E. Fentner, Jr., were explained as follows: 1942 (d) Compensation received by you during the year 1942 was overstated by $8,907.08, which amount represents salaries and bonuses accrued in 1942, but not paid until February 27, 1943. Since you reported income on the cash basis, only the amount actually received should be included in your return for the taxable year. 1943 (a) Compensation received by you in 1943 was understated by $5,767.89, as shown in the following computation: Accurate Tool Co., Inc.,
Hartford, Connecticut.
Salary
$ 4,880.00
Bonus
3,206.08
Bonus accrued - 1942
8,903.08
Accurate Tool Co., Inc.
Newark, New Jersey
485.00
United Aircraft Corp.,
East Hartford, Connecticut
300.00
Total compensation received
$17,774.16
Compensation reported
12,006.27
Adjustment to income
$ 5,767.89 By appropriate assignments of error petitioners contest the foregoing adjustments made as to each taxpayer. Findings of Fact Petitioner Accurate Tool Co., Inc. - Petitioner is a Connecticut corporation with its principal place of business at Hartford, Connecticut. Its returns for the years here involved were filed with the Collector of Internal Revenue for the District of Connecticut. *273 Petitioner's books were kept and its returns were filed on the accrual basis. Petitioner was organized in May 1941, by Charles E. Fentner, Sr., Charles Summer, and Charles E. Fentner, Jr., to take over the business of a partnership composed of Fentner, Sr., and Summer. Fentner, Sr., was an experienced tool maker and was employed by the Holo-Krome Screw Corporation until April 1941. While so employed the plant superintendent of Holo-Krome, Paul Klooz, early in 1941 informed Fentner and others that Holo-Krome had additional work for persons desiring to do "sub-contract" work at home in the evening. By taking advantage of this opportunity, Fentner, Sr., established the foundation for petitioner. With limited capital Fentner, Sr., purchased some used machinery which he rebuilt and adapted it to the work received from Holo-Krome. The partnership was engaged mostly in the manufacture of service tools for aircraft manufacturers and during the year 1941, this constituted the larger portion of petitioner's production. After petitioner was organized the "subcontract" work from Holo-Krome fell off and Fentner, Sr., contacted the Pratt & Whitney division of United Aircraft in order to obtain work *274 directly from it, rather than through Holo-Krome. Charles E. Fentner, Jr., was during the years 1941 and 1942, employed by Pratt & Whitney as a purchasing engineer and partly through Fentner, Jr.'s efforts petitioner obtained contracts from Pratt & Whitney for the manufacture of pipe plugs for aircraft engines. On or about October 24, 1941, Summer tendered his resignation as vice-president and treasurer of petitioner and his stock, 190 shares, was sold to Charles L. Smith who, in turn, gave 95 shares to Klooz for the purpose of protecting Smith's interest in petitioner. Smith and Klooz each received an additional five shares from Fentner, Jr., so that the stockholdings of the Fentners would not exceed those of Klooz and Smith. At a meeting of petitioner's board of directors on October 24, 1941, Klooz was elected treasurer and Smith was elected vice-president. At that time Fentner, Sr., was petitioner's president and Fentner, Jr., was secretary. Petitioner paid a total amount of $1,997.25 for compensation of officers to Fentner, Sr., for its taxable period ended December 31, 1941, and had a net operating loss of $361.82. Irving E. Lasky, a certified public accountant, was employed by *275 petitioner shortly before May 28, 1942. Lasky's engagement included the rewriting of petitioner's books for 1941 and up through April 30, 1942, because the work of his predecessor had been inaccurate. In rewriting the books, no sheets were changed, but the books were restated from the original books or records such as checkbooks, receipt book, etc., and the old pages in the petitioner's books were left right in the books. The rewriting of petitioner's books employed Lasky's time from May 28 through June 26, 1942. Commencing early in the year 1942, petitioner began a period of expansion. It subcontracted at a profit, its less profitable business of manufacture of service tools; it took over by direct contract with United Aircraft the making of square-headed pipe plugs; it negotiated additional contracts from time to time, not only for additional sizes of square headed pipe plugs but for wing nuts, and, later on, for steel inserts; and many other items. The inserts were small cylindrical pieces of hard aircraft steel, threaded on the outside and having a lengthwise concentric threaded hole on the inside. The prior contractor for inserts had been making them of brass, but when United *276 Aircraft decided to have them made of nickel steel, that prior contractor was unable to devise a method of making them. Petitioner received its contracts for this item because Charles Fentner, Sr., was able to devise a method for their manufacture out of steel. Petitioner's gross sales, cost of goods sold, gross profit, other income, deductions other than compensation of officers, net income before compensation of officers, compensation of officers, and net income, as shown by its returns for the years 1941, [1] 1942, and 1943, were as follows: 1941
1942
1943
Gross sales
$20,662.67
$197,015.04
$329,107.79
Cost of goods sold
16,698.88
101,290.52
213,299.28
Gross profit
$ 3,963.79
$ 95,724.52
$115,808.51
Other income
10.64
378.32
Total income
$ 3,974.43
$ 96,102.84
$115,808.51
Total deductions other than compensation
of officers
2,359.00
22,670.18
53,053.36
Net income before deduction of compensa-
tion of officers
$ 1,615.43
$ 73,432.66
$ 62,755.15
Compensation of officers
1,977.25
41,469.99
38,623.82
Net income before taxes *
($ 361.82)
$ 31,962.67
$ 24,131.33
Beginning early in 1942 and from time to time thereafter, discussions, both formal and informal, *277 were had among the directors concerning officers' salaries and bonuses. Petitioner's minutes for 1942 and 1943, relating to the salaries of its officers may be summarized as follows: "Directors Meeting of January 20, 1942 "1. Officers elected: President - Charles E. Fentner, Sr. Vice-president - Charles L. Smith Treasurer - Paul W. Klooz Secretary and Assistant Treasurer - Charles E. Fentner, Jr. "2. Authorized a basic salary to Fentner, Sr., not in excess of $10,000 per year and in addition 25 per cent of petitioner's net profits, and until further action a weekly drawing account of $65 against his basic salary. "Directors Meeting of April 21, 1942 "1. Salary of $25 per week for Klooz effective as of January 1, 1942, and an amount of the net profits to be later ascertained and determined. "2. Salary of $25 per week for vicepresident Smith effective January 1, 1942. "3. Determination of basic salary of Fentner, Sr., deferred to a later meeting but drawing account against basic salary increased to $115 per week effective as of April 18, 1942. "4. Determination of compensation for Fentner, Jr., was deferred but voted that a percentage of the profits to be later determined would be *278 paid to him. "Directors Meeting of July 21, 1942 "Voted a six per cent bonus to such of petitioner's employees as continue in its employ throughout the second half of the year. Bonus payable on or before December 31, 1942. "Directors Meeting of September 12, 1942 "1. Salary of Fentner, Sr., fixed at $9,000 per year, plus 25 per cent of the net profits. "2. Salary of Klooz fixed at $45 per week retroactive to April 1, 1942, plus five per cent of the net profits. "3. Salary of Smith fixed at $45 per week retroactive to April 1, 1942. "4. Salary of Fentner, Jr., fixed at $2,000 per year effective as of April 1, 1942, plus 15 per cent of the net profits. "Directors Meeting of December 20, 1942 "Klooz tendered his resignation effective December 31, 1942. "Directors Meeting of February 5, 1943 "1. Salary of Fentner, Sr., fixed at $9,000 per year, plus 25 per cent of the net profits. "2. Salary of Fentner, Jr., fixed at $95 per week, plus 15 per cent of the net profits. "Directors Meeting of March 6, 1943 "John B. Fentner elected vice-president and assistant treasurer to be in complete charge of plant supervision and production and perform the duties and functions previously discharged *279 by Klooz. Compensation fixed at $95 per week, plus five per cent of the net profits." At a meeting of the directors on February 27, 1943, bonus checks for 1942 were distributed to Fentner, Sr., Fentner, Jr., and Klooz. At the meeting Klooz endorsed the reverse side of the various minutes of petitioner's directors which authorized the salaries and bonuses. By March 6, 1943, all of the outstanding stock of petitioner was owned by the Fentner family, this having been accomplished by the purchase of Klooz's and Smith's stock through a Mr. Meyer of New York. Fentner, Sr., during the years 1942 and 1943, worked long hours for petitioner. His services, although undoubtedly of great value to petitioner, were more in the nature of a machinist's services than as an administrator. Fentner, Sr.'s experience prior to the formation of petitioner was limited to shop work and he was completely without experience to administer petitioner. In 1941, petitioner operated at a loss and it appears that Klooz was the one who directed petitioner out of its unprofitable tool work. The later success of petitioner resulted from the continuing contracts to manufacture pipe plugs and wing nuts which demand petitioner *280 could not satisfy. Fentner, Sr.'s basic salary for 1942 was $9,000 and a bonus of $14,838.47. For 1943, his basic salary was $9,000 and a bonus of $10,968.79. A reasonable allowance for salary and bonus for Fentner, Sr., for each of the years 1942 and 1943 is $12,000. Fentner, Jr., was not employed full time by petitioner during the year 1942 as he was working for Pratt & Whitney. His earnings as a full-time employee for Pratt & Whitney from 1939 through 1942, were as follows: Year
Earnings
1939
$1,350.97
1940
1,922.03
1941
2,314.92
1942
3,530.00 After leaving Pratt & Whitney in January 1943, Fentner, Jr., was employed by a tool company in New Jersey for two months at $95 per week. During the remainder of 1943, he worked full time for petitioner. Fentner, Jr., through his position with Pratt & Whitney, was instrumental in getting contracts for petitioner. He assisted in the management of petitioner, both in production control and in an administrative capacity. During the year 1942, he worked evenings and weekends for petitioner. In 1943, he worked full time for petitioner, with the exception of two months. His basic salary for 1942 was $1,594 and he received a bonus of $8,903.08. For 1943, *281 his basic salary was $4,940 and a bonus of $6,581.27. A reasonable allowance for salary and bonuses for Fentner, Jr., for 1942 is $4,000 and for 1943, $8,000. Paul Klooz was an experienced plant superintendent employed by Holo-Krome Screw Corporation at a basic salary of $7,800 and in addition he received a bonus of $4,000, of a total of $11,800 from Holo-Krome both in 1942 and 1943. He worked at Accurate Tool Co., Inc., nights, frequently until midnight, and also on Sundays. In addition to his duties as treasurer and director, he was the night superintendent and also assisted Fentner, Sr., in the setting-up and adjustment of machinery. He received no salary for 1941, Fentner, Sr., being the only officer who received any pay for that year. For the year 1942, he received a basic salary of $2,114 and a bonus of $2,967.69, or a total of $5,081.69. His services to petitioner were worth more than he received. John B. Fentner was elected vice-president and assistant treasurer at the March 6, 1943, meeting of the board of directors following the retirement of Kloos from the company. He had charge of plant supervision and production, and assumed the duties of Klooz. He was familiar with the *282 operations of all of the machines in the plant and he supervised the running of the machines and the plant help. He worked from 9 to 10 hours a day. His compensation was fixed by the directors in their March 6, 1943, meeting at $95 per week, plus five per cent of the profits. He received $4,940 as fixed salary, plus $2,193.73 as a bonus. A reasonable allowance for salary and bonuses for the year 1943 for John B. Fentner is $6,000. The legal fee of $7,500 paid by petitioner to Hyman I. Fischback in 1943 was paid for the following services: Starting in February 1942, Fischback consulted with and advised Charles Fentner, Jr., as an officer of petitioner on petitioner's intra-stockholder relationship with Pratt & Whitney. He consulted with Charles Fentner, Jr., with regard to the expansions of the petitioner's activities and its relationship with Smith, one of the stockholders. From time to time throughout 1942, he wrote up the minutes of the various meetings of the board of directors and stockholders of the corporation. He advised the hiring of competent tax counsel and competent accountant, he advised the Fentners in connection with the possibility of litigation with Smith, the dissolution *283 of the corporation, the formation of a partnership, and the carrying on of the business as a partnership. He advised them in their negotiation for the acquisition of the stock outstanding in the names of Klooz and Smith. Fischback handled the general legal affairs of the corporation for 1942, and for a part of 1943. His financial arrangement was a retainer of $5,000 a year, but because he was expecting to, and did, enter the armed forces in 1943, he charged only a half year's retainer for 1943. Of his fee, $5,000 is properly accruable as a deduction for the year 1942, and $2,500 thereof is properly accruable as a deduction for the year 1943. In February of 1943, petitioner employed an accountant, Frederick W. Scholz of the accounting firm of Sproul, Scholz and Company of New York City, to adjust its books in order that they would properly reflect the actions of petitioner's directors during the year 1942, and to prepare its tax returns for that year. Petitioner paid $1,500 for these services contracted for and performed in 1943, but in its return for 1942 it took as a deduction the entire $1,500. No portion of the $1,500 is accruable for 1942, but it is properly accruable for the year *284 1943. For the year 1942, petitioner's books show as a cost of manufacturing, $3,279.74 for perishable tools and dies. For the year 1943, petitioner in its return deducted $9,939.21 for perishable tools. Certificate of Necessity WDN 10124 for $8,378.98 was approved by the War Department on September 8, 1942. This certificate was filed by petitioner on July 19, 1942, and includes only $3,997.95 of equipment acquired within six months prior to July 19, 1942. Certificate of Necessity WDN 13786 was approved by the War Department on March 2, 1943. This certificate was filed by petitioner on November 26, 1942, and includes $3,065.85 of equipment acquired within six months prior to November 26, 1942. In its return for the year 1942, petitioner deducted $813.30 for amortization of emergency facilities. For the year 1943, the amount of the deduction for amortization of emergency facilities is not specifically noted in petitioner's return; however, in its petition the amount of $2,438.40 is alleged to have been deducted, $2,017.83 of which petitioner claims it is entitled to have allowed as a deduction. The Commissioner based his computation of excess profits credit for both the years 1942 and *285 1943 upon an invested capital of $5,130.94. For 1943, he failed to include the amount of petitioner's accumulated earnings at the end of the year 1942. The amount of such earnings which, in turn, is dependent upon the allowance or disallowance of the contested 1942 deductions, should properly be included in determining invested capital. Petitioner operated its shop for more than eight hours per day during 1942, and claimed on its return depreciation of $880.28 on machinery and equipment of which petitioner claimed $357.84 as representing accelerated depreciation. Petitioner's income tax, declared value excess profits tax, and excess profits tax returns for the year 1942 were not false or fraudulent with intent to evade tax. No part of any deficiency for 1942 is due to fraud with intent to evade tax. Petitioners Charles E. Fentner, Sr., and Charles E. Fentner, Jr. - For the years 1942 and 1943, petitioners filed their tax returns on the cash basis with the Collector of Internal Revenue for the District of Connecticut. In his income tax return for the year 1942, Fentner, Sr., reported as salaries and bonuses from petitioner Accurate Tool Co., Inc., the amount of $23,811.22. Fentner, *286 Sr., actually received $8,515 during the year 1942, and the remaining amount of $15,296.22 was received in 1943. Of the $15,296.22 received in 1943, $14,838.47 represents payments by petitioner Accurate Tool Co., Inc., which were not even credited to the account of Fentner, Sr., until after December 31, 1942. In his income and victory tax return for the year 1943, Fentner, Sr., reported $19,968.79 as compensation received for that year. Fentner, Sr., actually received $24,683.47 as compensation for the year 1943. In his income tax return for 1942, Fentner, Jr., included in income for that year $8,907.08 representing salaries and bonuses paid by petitioner Accurate Tool Co., Inc., in 1943. Of this $8,907.08 received from Accurate in 1943, $8,903.08 was not even credited to the account of Fentner, Jr., until after December 31, 1942. In his income and victory tax return for the year 1943, Fentner, Jr., reported $12,006.27 as compensation received in that year; Fentner, Jr., actually received $17,774.16 as compensation for the year 1943. Opinion BLACK, Judge: Petitioner Accurate Tool Co., Inc. - The questions we have for decision in this proceeding are as follows: 1. Did respondent err *287 in determining that a part of the deficiency for the year 1942 was due to fraud? 2. Were the amounts of $27,050.24 and $19,743.82 paid as officers' salaries for the years 1942 and 1943, respectively, properly disallowed for the reason that they were excessive? 3. Was the amount of $9,000 paid in 1943 for legal and accounting fees for the year 1942 properly disallowed by the Commissioner? 4. Were the amounts of $693.51 and $2,578.39 claimed by petitioner as deductions for depreciation in the years 1942 and 1943, respectively, properly disallowed by the Commissioner for the reason that they were capital expenditures? 5. Were the amounts of $148.23 and $1,176.28 claimed by petitioner as deductions representing the amortization of war facilities for 1942 and 1943, respectively, properly disallowed by the Commissioner? 6. Was the amount of $357.84 claimed as a deduction for accelerated depreciation for 1942 properly disallowed by the Commissioner for the reason that it was excessive? 7. Did the Commissioner err in failing to allow accumulated earnings as of January 1, 1943, as part of petitioner's equity invested capital? We shall take up and decide the issues in the order presented above. *288 1. Fraud. - Respondent has determined that petitioner is liable for the 50 per cent civil fraud penalty under the provisions of section 293 (b) of the Internal Revenue Code. Respondent's position is that the bonuses to petitioner's officers claimed as deductions by petitioner for 1942 were not conceived until 1943, that the corporate minutes authorizing these bonuses were prepared in 1943 under the direction of an attorney hired in 1943, and implemented in the 1942 tax return filed in 1943 by an accountant hired in 1943. The determination of fraud by respondent places upon him the burden of proving fraud by clear and convincing evidence. M. Rea Gano, 19 B.T.A. 518. In William W. Kellett, 5 T.C. 608, we said: "What constitutes fraud is a question of fact which frequently requires a nicely balanced judgment to answer. To be considered are all of the facts and circumstances surrounding the conduct of the taxpayer's business and all the facts incident to the preparation of the alleged fraudulent return. The conclusion must be reached not on isolated bits of testimony, but on the whole record. * * *" We think that respondent has failed to meet his burden of proof. Respondent produced *289 witnesses and evidence which tended to show that the corporate minutes authorizing these bonuses were not in existence during the year 1942. However, the testimony of these witnesses was oftentimes contradictory and, in the case of one witness, Klooz, the credibility of his testimony was seriously discredited by prior statements and actions. It was largely through negative testimony tending to show that the formal and final corporate minutes authorizing these bonuses were not in existence in 1942 that respondent attempted to prove that these minutes were neither written in 1943 nor did petitioner's directors authorize such action until 1943. When, as now, we are faced with the question involving the determination of fraud, we cannot find that a part of the deficiency is due to fraud on the basis of evidence which is far less than clear and convincing. This is especially true in the instant proceeding where we have credible affirmative evidence that the alleged fraudulent minutes were actually conceived and prepared in 1942. We have found that petitioner did employ in 1942 the attorney who prepared the minutes in question, and the attorney's secretary who left his employ in July of *290 1942 testified that she typed the minutes of the directors' meetings of January 20, April 21, and July 21, of 1942. Two of petitioner's four directors affirmed the fact that the minutes properly reflected the action of the directors regarding bonuses. One of petitioner's directors, Smith, who died before the hearing of this proceeding did not receive a bonus as he performed no services to petitioner other than as a director. Petitioner's other director, Klooz, received in 1943 his bonus which was in accordance with the minutes of 1942 which were endorsed by Klooz for the purpose of verifying their contents. Petitioner's secretary admits that the formal and final minutes of petitioner's directors' meetings for the year 1942 were not an exact duplication of the rough notes taken by him at these meetings, but the substance of the formal minutes represents a true picture of the decisions of petitioner's directors, both at formal meetings and at informal discussions. The testimony of respondent's witnesses who claimed to have seen petitioner's minute book in 1942 is vague and uncertain as to both the time when the minutes were seen and the contents thereof. On the other hand, the testimony *291 of the witnesses who support petitioner's contention that the contested minutes were prepared in 1942 is credible and certain. We have carefully examined the testimony and documentary evidence and realize that there are certain irreconcilable differences, but on the basis of the entire record we have concluded that respondent failed to establish that the contested minutes were not prepared as contended by petitioner in the year 1942, and, therefore, the determination of fraud by respondent is not sustained. 2. Reasonableness of Salaries Paid to Petitioner's Officers. - Respondent contends that if, as we have found, the bonuses paid in 1943 were actually authorized in 1942, and that the minutes of petitioner's directors truly reflect the action of its directors then, nevertheless, these bonuses and those for 1943 are not deductible as an ordinary and necessary expense as they were in excess of a reasonable amount. An additional argument of respondent that the bonuses for 1943 are not deductible because they were in violation of the Wage Stabilization Act of 1942 has been disposed of by our finding that these bonuses were authorized in 1942, as set out in the minutes of petitioner's *292 directors, which authorization was before the effective date of the Wage Stabilization Act. The following table shows the salaries which respondent has allowed and the amounts which he has determined as excessive: 1942
1943
Allowed
Disallowed
Allowed
Disallowed
Charles E. Fentner, Sr.
$8,631.75
$15,179.47
$9,000.00
$10,968.79
Charles E. Fentner, Jr.
1,594.00
8,903.08
4,940.00
6,581.27
Paul W. Klooz
2,114.00
2,967.69
Charles L. Smith
2,080.00
John B. Fentner
4,940.00
2,193.76
It is true that the Commissioner's determination of the reasonableness of salaries is prima facie correct. ( Sportwear Hosiery Mills v. Commissioner, 129 Fed. (2d) 376; A. David Co. v. Grissom, 64 Fed. (2d) 279; Shields Co., Inc., 2 T.C. 763; Wagegro Corporation, 38 B.T.A. 1225) but the reasonableness of these amounts is open to proof by petitioner, Botany Worsted Mills v. United States, 278 U.S. 282. In this proceeding we have considerable evidence bearing on the reasonableness of the salaries involved herein. In determining the reasonableness of the salary of a given officer, we must examine many factors; the nature of the services, the officer's experience, his former earnings, the earnings of employees performing similar services *293 in a comparable enterprise, the amount of time devoted to petitioner's affairs, and the ratio of the particular salary and the aggregate salaries to gross income. While we do not have evidence in this proceeding covering all of these factors for each officer, we do have sufficient evidence upon which we have made a determination as to a reasonable allowance for salaries or other compensation for personal services rendered, which determination is a part of our findings of fact. Our findings of fact in this respect should be given effect in a recomputation under Rule 50. 3. Legal and Accounting Fees. - In 1942, petitioner employed an attorney, Fischback, who rendered services to petitioner for most of the year 1942 and for about one-half of 1943. The agreement between petitioner and Fischback provided for a fee of $5,000 per year. Petitioner paid Fischback $7,500 on February 27, 1943, and took as a deduction this amount in its return for the year 1942. Since only $5,000 of the $7,500 represented a proper accrual for the year 1942, $5,000 is properly deductible for that year and the remaining $2,500 represents a deduction for the year 1943, to which petitioner is entitled. In 1943, petitioner *294 employed an accountant to prepare its tax returns for the year 1942, and to make such adjustments to petitioner's books as were necessary to properly determine its net profit for 1942. For these services petitioner paid on February 27, 1943, $1,500, which amount was deducted in petitioner's returns as an expense for the year 1942. Since no services were rendered nor an employment contract entered into in 1942, this deduction was improperly taken in 1942, but is a proper deduction for the year 1943. 4. Capital Items. - Respondent disallowed $693.51 and $2,578.39 claimed by petitioner as expenses incurred in the purchase of perishable tools for the years 1942 and 1943, respectively. Respondent introduced in evidence an itemized list of tools and dies purchased by petitioner in 1942 in the amount of $693.51 and of machinery purchased by petitioner in 1943 in the amount of $2,628.39. Respondent disallowed as expense deductions all of the above purchases for 1942, and $2,578.39 of the purchases in 1943 for the reason that they represented capital expenditures. Petitioner has failed to prove that these items disallowed by respondent were not capital assets and, therefore, respondent's determination *295 is sustained. 5. Amortization of War Facilities. - In its return for the year 1942, petitioner deducted $813.30 for amortization of emergency facilities and in its petition the amount of $2,438.40 is alleged to have been deducted in 1943 for amortization of emergency facilities, $2,017.83 which petitioner claims it is entitled to as a deduction for 1943. The Commissioner disallowed $148.23 and $1,176.28 for the years 1942 and 1943, respectively. We have found that these certificates of necessity applied for and issued to petitioner in 1942 include only $7,063.80 of equipment acquired within six months prior to the filing of petitioner's application for these certificates. In accordance with section 124 (f) of the Internal Revenue Code, only $7,063.80 of machinery which represents machinery acquired within six months prior to the filing of the application may be amortized over a 60-month period. We have examined the certificates of necessity and in accordance with section 124, I.R.C., petitioner is entitled to a deduction for the amortization of emergency facilities of $667.21 for the year 1942, and $1,412.36 for the year 1943. 6. Accelerated Depreciation. - Petitioner in its return *296 for the year 1942 deducted $357.84 representing depreciation resulting from the excessive use of its depreciable assets. Although petitioner, on a limited basis, operated its machinery more than the eight hours a day, petitioner has failed to prove that such excessive use resulted in a shortening of the remaining life of the machinery and thereby entitling petitioner to a deduction in excess of the amount determined by respondent. Harry Sherin, 13 T.C. 221; Copifyer Lithograph Corporation, 12 T.C. 728. We, therefore, sustain respondent's disallowance of $357.84 representing petitioner's claimed accelerated depreciation. 7. Equity Invested Capital. - In accordance with section 718 (a) (4) of the Internal Revenue Code petitioner is entitled to include in its invested capital its earned surplus at the beginning of 1943 for the purpose of determining its excess profits tax credit for 1943. Respondent has determined petitioner's equity invested capital for 1943 to be $5,130.94. In a recomputation under Rule 50 effect will be given to our decision relating to petitioner's net income for 1942 and on the basis of the recomputation the amount of earned surplus to be included in petitioner's *297 equity invested capital under section 718 (a) (4) will be determined. Petitioners Charles E. Fentner, Sr., and Charles E. Fentner, Jr. - Petitioners have conceded that all of the adjustments made by the Commissioner to their net incomes for the years 1942 and 1943 were proper, except for the adjustments which excluded from 1942 their income and included in their 1943 income the compensation actually received in 1943 from petitioner Accurate Tool Co., Inc. Petitioners filed their returns on the cash basis and included in their income for 1942 some of the salaries and bonuses accrued by Accurate in 1942 but not paid to petitioners until February 27, 1943. No entry of this accrual was made on the books of Accurate in 1942 and not only did petitioners not have an unqualified right to this amount in 1942, but neither petitioners nor Accurate in 1942 had determined the exact amount of the bonuses which were accruable for that year and eventually paid in February 1943. Petitioners being cash basis taxpayers could report only in 1942 as income that amount which they actually or constructively received and since the amounts in question had neither of these characteristics, respondent's determination *298 is sustained. Decision in Docket No. 8802 will be entered under Rule 50. Decisions in Docket Nos. 10029 and 10097 will be entered for the respondent. Footnotes
1. Amended return.↩
*. Petitioner had an operating loss of $361.82 for 1941. ↩